B. L. and JNO. M. PERRY, Ex'rs. *v.* THE MERCHANTS BANK OF NEW BERNE, CAROLINA NATIONAL BANK, of Columbia, S. C. and A. T. JERKINS.

In a suit between two banks for the recovery of $19,331, it is agreed by the debtor bank to pay one half of said debt and interest in cash, and to satisfy, pay and discharge the balance by paying over to the other 50 *per cent.* of its assets as they are collected, and as may be sufficient therefor, the creditor bank agreeing to accept such payment and agreement as to the remainder, in "full satisfaction, payment and discharge of the suit and of all matters controverted therein or appurtenant:" *Held*, that this agreement was in effect an assignment of one half the assets of the debtor bank, as a security for its remaining indebtedness.

*Held further*, That such assignment not being registered, was void against a creditor of the bank making the assignment; and that the creditor acquired a lien on the choses in action assigned, as soon as the Court below condemns them to his use.

(*Smith* v. *Washington*, 1 Dev. Eq. 318; *Lindsay* v. *Wilson*, 2 Dev. 8 Bat. Eq. 8, cited and approved.)

PERRY and PERRY EX'RS. *v.* THE MERCHANTS BANK OF NEW BERNE *et al.*

PROCEEEDINGS, supplemental to execution, heard before *M· ·re, J.,* at Chambers, EDGECOMBE county, 24th November, 1874.

The defendants having heretofore appealed to the Supreme Coui t, see same entitled case, 69 N. C. Rep. 551, and the case having been remanded in order that an account should be taken, and for other purposes; it is now moved that the Carolina National Bank of Columbia, S. C , be made a party, which is permitted, and that the counsel of the parties have leave to file the following agreed statement of facts, which is done, to-wit;

" By consent of parties, the account ordered in the cause by the Supreme Court, of the amount due the Carolina Bank by the Merchants' Bank, and of the value of the assets of the Merchants' Bank is waived; and it is admitted that one-half of the assets of the Merchants' Bank, inclusive of the Jerkins' note, is insufficient to pay the balance due the said Carolina Bank."

The plaintiffs, upon the foregoing statement, moved for judgment that the respondent, A. T. Jerkins, be ordered to pay to the plaintiffs so much of his indebtedness to the defendant, the Merchants' Bank of Newberne, as shall be sufficient to ··tisfy the judgment of the plaintiffs.

The Clerk being of opinion that the facts admitted presented a question of law, refused the motion and transmitted the proceedings to the Judge; who, upon consideration, declares that the plaintiffs are entitled to the Jerkins debt, as against the Carolina National Bank, and gave judgment that Jerkins pay to the plaintiffs so much thereof as shall be sufficient to satisfy their judgment.

From the above judgment the Carolina National Bank appealed, assigning as grounds:

1. That the assignment of the Merchants' Bank of Newberne to the Carolina National Bank, is a valid transfer of the debt due said bank by the defendant Jerkins, as against the plaintiff, of one-half of said debt.

2. That the private stockholders of the Merchants' Bank, who made the advance of $2000 towards the cash payment to the Carolina Bank, are entitled to be reimbursed out of the other half of said debt due by Jerkins.

*Merrimon, Fuller & Ashe,* for appellants, submit the following:

The paper executed by the Merchants' Bank and the Carolina Bank, defendants, on the 3d December, 1869, is an executed agreement, an equitable assignment, whereby the Merchants' Bank is released from its debt of $19,331, which before that time was in suit in the Circuit Court of the United States. For that release, the Merchants' Bank paid the Carolina Bank $10,306 in cash, and assigned of its assets, which consisted of the note of Jerkins and other choses in action, an amount equal to the residue of the former indebtedness, not to exceed however 50 per cent. of the proceeds of its assets.

This was "*a valid, equitable assignment*" of so much of the assets of the Merchants' Bank, not in excess of 50 per cent. thereof, as would amount to the residue of the former debt. In equity it is to be taken that the parties have performed their agreements.

Under this argreement, the Merchants' Bank recognizing its assignment undertakes to act *as agent* of the Carolina Bank *for collection,* not to be liable for amounts not collectable, and being empowered to compromise and adjust, &c., by the Carolina Bank.

The consideration for this agreement was as follows:

1. The Merchants' Bank of Newberne, was thereby released from its debt to the Carolina National Bank; the suit pending against it was dismissed; and in case 50 per cent. of the collectable assets should not amount to the residue of its former indebtedness, there is an abatement of the deficiency and so much gained to the Merchants' Bank.

2. On the other side, the consideration to the Carolina National Bank was the cash payment of $10.306, and the further

*payment in the assets* of the Merchants' Bank, assigned by the said agreement and consisting of the notes to the debtors to that bank, to-wit, the notes of Jerkins and others.

As an additional consideration, the Carolina Bank dismissed its suit, paid one-half the costs and released its right of action against the individual stockholders of the bank.

It is apparent then that the instrument of December, 1869, is *not a security for debt*, but is evidence of an absolute payment and satisfaction of the debt, as appears plainly by this provision, " that the Carolina Bank agrees to accept the said payment ($10,306 in cash,) and the agreement just hereinbefore mentioned (meaning the assignment of its assets) *in full satisfaction, payment and discharge of the said suit and all matters therein controverted or appurtenant.*"

It is not an instrument to secure debts, but an assignment to pay a debt, and a paper evidenced by this agreement: " The deed not being intended as a security for money, is not therefore one of those deeds in trust which must be registered within six months or be void as to creditors." *Green* v. *Kornegay*, 4 Jones p. 69. This instrument, then, is not within the present registration act. Treating the supplementary proceedings as a case of garnishment, the plaintiff seeks "to recover by substantially an action at law" money due the defendant in the execution. *Patton* v. *Smith*, 7 Ired. 441. The legal title to the Jerkins note, it is true, is in such defendant; but the beneficial interest in 50 per cent. of it has been assigned. The plaintiff would then take the proceeds, subject to the duties of the defendant in the execution, merely as a trustee to collect and pay over, which would be a vain thing.

*J. L. Bridgers, Jr.,* contra.

RODMAN, J. When this case was before us at June Term, 1873, (69 N. C. 551,) it was assumed as conceded, that the agreement between the Carolina National Bank and the Merchants Bank, was intended as an assignment of one-half of the

assets of the latter, to the former, as a security for the residue of the debt, amounting to over $10,000.

It is now contended, apparently for the first time, that the agreement was intended to be, and was in effect. an absolute assignment of one-half of what the Merchants Bank should collect of its assets, to the Carolina Bank, in consideration of a discharge and release of the debt from the former, to the latter, which was released by the agreement ; the evidences of debt being left with the Merchants Bank as a co-owner, and as agent for the Carolina Bank as to its half. On the other side it is contended, that the agreement did not assign any part of the evidences of debts held by the Merchants Bank, but only the one-half of the proceeds of those debts when they should be collected, which would be a mere personal executory contract on the part of the Merchants Bank, in no wise binding on its other creditors.

It is certainly difficult to say what was the intention of the parties, and we regret that the points were only suggested, and not fully argued.

The language of the agreement seems almost studiously vague and cloudy.

After reciting that the Carolina Bank had sued the Merchants Bank in the Circuit Court of the United States to recover $19,331 on notes issued by the Merchants Bank, and that the parties had agreed, to "settle said suit, with all the matters controverted therein, or appurtenant," the Merchants Bank agreed, immediately to pay the Carolina Bank, one-half the debt and interest, " and to satisfy, pay and discharge *the remainder of said indebtedness*, by *paying over* to the Carolina Bank, as the same shall be reasonably collected, fifty per cent. of so much of all the assets of the Merchants Bank, *as may be sufficient therefor*; Provided, &c." And the Carolina Bank " agrees to accept the said payment, and the agreement just hereinbefore mentioned, in full satisfaction, payment and discharge *of said suit, and of all matters therein controverted*

*or appurtenant,*" and to dismiss the suit.   The agreement then proceeds to release the stockholders from individual liability.

We are of opinion, that the Carolina Bank did not intend to release its debt against the Merchants Bank, and to take either the agreement of that Bank, or the assignment of the half of its assets, in payment of the debt.   The Merchants Bank is to pay its remaining indebtedness, by *paying over* the half of what it may collect, until the debt is paid,—but when enough shall have been collected and paid over to pay the sum remaining due, no more is to be paid.   This, taken with the cautious language of the subsequent release, is conclusive that an absolute assignment of one-half the assets was not intended ; for in that case, the Carolina Bank would have been entitled to continue to receive half the collections, after its debt was paid, and although the amount might have greatly exceeded its debt. The language of the releasing clause, seems carefully to avoid releasing the debt.   The Carolina Bank accepts the agreement, "in payment of the suit " (not of the debt sued for) " and of all matters therein controverted."   We do not know what matter was controverted, and if the Merchants Bank, had in pleading in that suit, denied its liability upon the bills sued on, the phrase would be an exceedingly awkard and round about way of releasing that liability.   The phrase " and appurtenant," probably refers only to the costs.   When the intention is to release the stockholders, it is clearly and directly expressed, which shows that the parties knew how to use appropriate terms to express their intentions.

We think that the parties intended the agreement to have effect as an assignment of half the assets of the Merchants Bank, as a security for its remaining indebtedness.

Whether, by reason of its being not a direct assignment of the assets, but only an executory personal covenant to pay over when collected, it would, had it have been duly registered, have had effect as an assignment, as to creditors and purchasers without actual notice, we think it is unnecessary to determine.   For, we have no difficulty in saying, that if we

regard it as a direct and actual assignment of the evidences of debt, yet, not having been registered, it is void as to the plaintiffs. *Smith* v. *Washington*, 1 Dev. Eq. 318.

The defendant then contends that the plaintiff has acquired no estate or lien to which the law gives a preference, in the particular debts of Gooding and Jerkins, and as between two assignees, neither of whom has a legal estate or lien to which the law gives a preference, equity will give priority to the first in time. For this he cites *Lindsay* v. *Wilson*, 2 D. & B. Eq. 8.

The principle is admitted. The only question is, whether in this case the law does not give the plaintiff a preferable lien.

The Act of 1868-'69, ch. 148, sec. 1, (Bat. Rev. ch. 17, sec. 261,) enacts, that no execution shall be a lien on the personal property of the defendant, as against *bona fide* purchasers for value, or against other executions, except from the levy. As the Carolina National Bank released the personal liability of the stockholders of the Merchants Bank, it was a purchaser for value. But as the assignment was a security only, and was not registered, it was still void as against the plaintiffs as we have seen. Now, at what time did the plaintiffs acquire any lien upon the debts owing by Gooding and Jerkins?

The debts being choses in action were incapable of an actual seizure by the sheriff, and as by the C. C. P. sec. 264, and the following, they were made liable to execution, by analogy, the lien must be held to have been acquired when the plaintiff did what appropriated the debts to his judgment, as a levy would have appropriated tangible property. It may be that this appropriation was made by service of process on the debtors under sec. 266, C. C. P., but as we are not required to decide on this point, we refrain from doing so. We think, at least, an appropriation was made, and a lien acquired, when the Superior Court directed the debts of Gooding and Jerkins to be applied to the plaintiffs' judgment.

The plaintiff had certainly then, done what was equivalent to a levy. The case cited, therefore, does not apply: the

equities of the parties are not equal, for, as against the plaintiffs, the National Bank of Carolina has no equity, and the plaintiff has a lien at law. It is just as if a debtor had made a mortgage of tangible goods, which was not registered when they were levied on under execution.

PER CURIAM.                                    Judgment affirmed.